PETER M. WILLIAMSON, State Bar No. 97309
TODD B. KRAUSS, State Bar No. 187991
WILLIAMSON & KRAUSS
18801 Ventura Blvd., Suite 206
Tarzana, CA 91356
Tel: (818) 344-4000/ Fax: (818) 344-4899

Attorneys for Plaintiff
WILLIAM EDWARDS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM EDWARDS,<br><br>  Plaintiff,<br><br>vs.<br><br>COUNTY OF VENTURA, DEPUTY NORA SOLER, and DEPUTY GUILLERMO VALENCIA,<br><br>  Defendants. | CASE NO. CV 07-04821 RGK (RZx)<br><br>PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE No. 4 — EXCLUSION OF EVIDENCE OF LESSER INTRUSIVE ALTERNATIVES<br><br>PRE-TRIAL:  July 14, 2008<br>TIME:       9:00 A.M.<br>CTRM:       850<br>TRIAL:      July 29, 2008 |

Plaintiff, WILLIAM EDWARDS, hereby submits the following Memorandum of Points & Authorities in Opposition to Defendants' Motion in Limine to Exclude evidence that lesser intrusive alternatives to the force actually used were available.

1. <u>FACTUAL BACKGROUND</u>

On or about February 16, 2007, at or about 12:00 A.M. in the City of Camarillo, County of Ventura, California, plaintiff was walking in an area where he had been involved in a previous shooting incident while acting as a Deputy Sheriff for the Ventura County Sheriff's Department (hereinafter the "VCSD"). Plaintiff was planning on meeting a friend and fellow deputy later that morning after the deputy's shift ended. While waiting for his friend to arrive, three VSCD patrol vehicles appeared at the

1

----------------------------------------------------------------------------------------------------------------------------
Plaintiff's Opposition to Defendants' MIL No. 4 - Exclude Evidence of Lesser Intrusive Alternatives

1  location. Defendant, Deputy SOLER, exited her patrol vehicle, greeted the plaintiff and
2  asked what he was doing. After informing SOLER that he was simply walking the area
3  in an effort to resolve some lingering thoughts he had about the shooting he had
4  previously been involved in, SOLER asked plaintiff where his gun was. Plaintiff informed
5  SOLER that he did not have a gun because he was no longer a sheriff's deputy.
6  Undeterred by plaintiff's response, SOLER repeated the question a second time. Once
7  again, plaintiff informed SOLER that he had no gun in his possession.
8       Defendant, Deputy VALENCIA, also arrived at the location and when
9  approaching the plaintiff, he was told by plaintiff to back up since he had done nothing
10 wrong. Once the plaintiff had turned his attention back to SOLER, VALENCIA tackled
11 plaintiff from behind without legal cause or justification and slammed him into the
12 ground, separating plaintiff's shoulder.
13      The Defendant's contend that the plaintiff made vague and ambiguous statements
14 which they claim were suicidal. The defendant's further contend that it was necessary to
15 take the plaintiff to Ventura County Mental Health under Welfare and Institutions Code
16 §5150 for a mental evaluation. After being examined by a mental health professional, it
17 was determined that plaintiff was not a threat to himself or others and he was released
18 from further detention. Furthermore, no criminal charges were ever brought against
19 plaintiff.
20      At trial, plaintiffs intend to offer the testimony of an expert witness who will
21 suggest other alternatives that may have been employed to detain plaintiff without
22 resorting to tackling him to the ground and seriously injuring his shoulder. For example,
23 Defendant SOLER testified that she had been trained as a Crisis Intervention Team
24 member by the Ventura County Sheriff's department to deal specifically with individuals
25 who are or are suspected of suffering from mental illness (presumably this would include
26 individuals suspected of being suicidal) without resorting to physical force. Furthermore,
27 all the deputies testified that Edwards was never told to lay prone on the ground
28 voluntarily or asked to place his hands behind his back to be taken into custody. No less

than three deputies were present before plaintiff was tackled to the ground. However, no thought was ever given to utilizing any other technique or approach to try and subdue him despite the fact that he had never verbally or physically threatened any of the deputies.

By their Motion in Limine No. 4, defendants seek to prevent the introduction of lesser intrusive alternatives to the force actually used on the grounds that such evidence is never admissible in Section 1983 excessive force cases. However, evidence of the availability of alternatives to subduing Edwards goes to the very heart of the reasonableness of the defendants use of force in this case.[1] Accordingly, defendants' in limine motion should be denied.

## 2. EVIDENCE OF ALTERNATIVE METHODS OF CAPTURING OR SUBDUING A SUSPECT IS HIGHLY RELEVANT IN DETERMINING THE REASONABLENESS OF A PARTICULAR USE OF FORCE.

While police officers need not use the least amount of force available,[2] defendants repeatedly confuse this issue with the reasonableness of the force actually employed. Numerous decisions of the Ninth Circuit have held that the "availability of alternative methods of capturing or subduing a suspect may be **a factor** to consider" in determining the objective reasonableness of a particular use of force.[3] (emphasis added)  In Smith v. City of Hemet,[4] the very question of alternative methods of subduing a suspect was

---

[1] Defendants' counsel knows full well that the contention raised by the instant Motion lacks merit and is not supported by recent decisions of the Ninth Circuit because it has been brought to his attention in other cases in which the same attorneys have been involved. Despite the contrary nature of current case law, defendants' counsel persists in this argument which is brought in bad-faith. The court is asked to consider the imposition of sanctions against defendants' counsel for the filing of this frivolous motion.

[2] Scott v. Henrich (9th Cir. 1994) 39 F. 3d 912, 915

[3] Chew v. Gates (9th Cir. 1994) 27 F. 2d 1432, 1440 fn. 5

[4] Smith v. City of Hemet, (9th Cir. 2005) 394 F. 3d 689

addressed. The court found that such evidence is highly relevant in evaluating the reasonableness of force used.

> "As we have previously explained, an additional factor that we may consider in our **Graham** analysis is **the availability of alternative methods of capturing or subduing a suspect.** **Chew v. Gates**, 27 F.3d at 1441 n.5. Smith argues that the officers' conduct violated applicable police standards and that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury. Smith offered an expert declaration on the training of police dogs and police dog handlers. Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training, which are applicable to all state police officers and are a part of Department policy. He concluded that the officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground. **See also** Hemet Chief of Police, "Use of Force," Gen. Order No. U-102 (discussing "professional presence," "compliance techniques," and other "intermediate force" less likely to cause death or serious injury). **A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable**. [citations]." [5] (emphasis added)

The most recent revision (January, 2008) of the Ninth Circuit Model Jury Instruction No. 9.22, which sets out the elements that plaintiff must prove to establish his claim of excessive force, adds the following language to a list of factors to be considered by a jury in assessing the objective reasonableness of the use of force:

"6.  The availability of alternative methods [to take the plaintiff into custody] [to subdue the plaintiff."

The support for this revision in the Model Jury Instructions is the en banc opinion written in the **Smith** case.

It is interesting to note that defendants cite <u>Forrester v. City of San Diego</u> [6] in support of their position. But, even Forrester indicated that in analyzing an excessive force case, "the inquiry is whether the force that was used to effect a particular seizure was

---

[5] Id. at p. 249-250

[6] (9th Cir. 1994) 25 F. 3d 804

4

--------------------------------------------------------------------------------

reasonable." [7]  That analysis must, necessarily, include consideration of alternative methods of capturing or subduing the suspect.

The instant case involves the use of force to subdue a man who was not a violent felon and had committed no crime. By their own admission, Sheriff's Deputies responded to a call of a "suspicious subject." In order to assess the reasonableness of the defendants use of force, the jury must be permitted to consider evidence that alternative methods of subduing Edwards (such as the use a CIT member or verbally asking him to comply with commands to lay prone or place his hands behind his back) were available to defendants but that they choose to use force in tackling plaintiff to the ground instead.

3. CONCLUSION

Based on the foregoing, it is clear that evidence of the availability of alternative methods of subduing plaintiff is highly relevant to the jury's determination of the objective reasonableness of the use of force by defendants. For these reasons, plaintiff respectfully requests that defendants' In Limine Motion to exclude such evidence be denied.

DATED: June 23, 2008

                                                    Respectfully submitted,

                                                   WILLIAMSON & KRAUSS

By:   /s/ PETER M. WILLIAMSON
      Attorneys for Plaintiff
      WILLIAM EDWARDS

---

[7] Id. at p. 807-808